699 P.2d 429

Dean Arthur **SCHWARTZMILLER**,
Petitioner-Appellant,

v.

**STATE of Idaho, Respondent.**

No. 15231.

Court of Appeals of Idaho.

April 30, 1985.

Petition for Review
Denied June 20, 1985.

**330**

Wayne Fuller, Caldwell, for petitioner-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for respondent.

PER CURIAM.

Dean Arthur Schwartzmiller appeals from denial of an application under I.C. § 19–4901 for post-conviction relief. After an evidentiary hearing, the district court concluded that Schwartzmiller's constitutional rights to a fair trial and to compulsory process for the attendance of witnesses on his behalf were not impermissibly abridged during his trial on charges of lewd and lascivious conduct with a minor. Schwartzmiller asserts on appeal the district court erred in its findings of fact and conclusions of law. We affirm the order denying relief.

■ Compulsory process and due process rights granted to an accused by the United States Constitution are involved in this appeal. The sixth amendment to the United States Constitution grants the right to one accused of criminal activity to have compulsory process for obtaining witnesses in his favor. Article 1 § 13 of the Idaho Constitution contains a similar provision. The sixth amendment is applicable to state criminal proceedings through the due process clause of the fourteenth amendment. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019, (1967). The due process clause also guarantees that a criminal defendant will be treated with "the fundamental fairness essential to the very concept of justice." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 872, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982), citing *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941). The process due an accused before he can be deprived of liberty also requires the accused be informed of exculpatory evidence in the prosecutor's possession. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

In this case, Schwartzmiller asserts that a potential witness named Ives failed to testify at Schwartzmiller's trial because of threats made by federal authorities against Ives, thus depriving Schwartzmiller of his constitutional right of compulsory process. Schwartzmiller also argues that his fourteenth amendment right of due process was violated when the prosecutor failed to reveal the existence of a report (Exhibit 6) of a conversation between Ives and federal authorities.[1] We are not persuaded that Schwartzmiller was deprived of any constitutionally guaranteed right.

I

■ Cases involving unavailable witnesses reveal that appellate review focuses on three relevant factual inquiries in determining a compulsory process claim: the nature and extent of government conduct, if any,

---

1. Exhibit 7, a transcript of a conversation between Ives and a California detective, was included in Schwartzmiller's due process claim at the post-conviction relief hearing. Because nothing in the record indicates the prosecutor was aware of the transcript before or during his trial, Schwartzmiller has not raised on appeal due process claims regarding Exhibit 7.

that contributed to the unavailability of the witness, the importance of the evidence to the defendant's case, and the defendant's diligence in exercising his sixth amendment right. Each inquiry is important, but the effect in a particular case of just one or two of the factual events may result in a deprivation of compulsory process. Thus, for example, no compulsory process deprivation occurred in *United States v. Holtzen*, 718 F.2d 876 (8th Cir.1983) where the missing witness' testimony was not essential or necessary to the defendant's defense and where the subpoenas on the three witnesses were not timely sought. Likewise, in *Green v. Estelle*, 488 F.2d 918 (5th Cir. 1973), the defendant was not deprived of a compulsory process right where the witness, although confined in the county jail, was not deliberately obstructed by the state and where the subpoena request was not timely and no motion for a continuance was made. The importance of the missing witness' testimony and significant government misconduct resulted in a compulsory process deprivation in *Singleton v. Lefkowitz*, 583 F.2d 618 (2nd Cir.1978) *cert. denied* 440 U.S. 929, 99 S.Ct. 1266, 59 L.Ed.2d 486 (1979). After evaluating the factual record in this case, we do not believe Schwartzmiller was deprived of his constitutional right to compulsory process.

■■■ The sixth amendment divides the pool of material witnesses into two distinct categories. The amendment's confrontation clause requires the state to present witnesses "against" the accused, the compulsory process clause creates a right in the defendant to present witnesses "in his favor." Thus, the sixth amendment allocates to the prosecution and the defense the burden of initiating production of witnesses and the risk of losing the benefit of their testimony if the initiation burden is not carried. WESTEN, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 HARV.L.REV. 567, 603 (1978). Although

the prosecution must reveal the *existence* of a witness important to a defense, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), "the state has no obligation under the compulsory process clause to produce witnesses on the defendant's behalf unless he himself *requests* that they be produced." (Emphasis in original.) WESTEN, *supra*, footnote 103 at p. 603.

■ In this case, the record indicates the witness Ives was interviewed in late 1979 by an FBI agent and, on a separate occasion, by a Fremont, California, police detective. The interviews, conducted almost five months before Schwartzmiller's trial, were part of an investigation into Schwartzmiller's alleged violation of federal law. Although Ives testified at the post-conviction relief hearing that FBI agents threatened him with federal charges if he failed to cooperate with their investigation of Schwartzmiller, and that their threats contributed to his decision not to testify for Schwartzmiller at his Idaho trial, the record also indicates that Ives and Schwartzmiller were not on good terms at the time of Schwartzmiller's trial. Pursuant to the uniform act to secure attendance of out-of-state witnesses, I.C. § 19–3005, Schwartzmiller's attorney requested, and received, an order directing Ives and another potential witness to travel from California for Schwartzmiller's trial. The other witness received a subpoena in California, but after interviewing him over the telephone, Schwartzmiller's attorney decided his testimony was not needed during the trial. Ives could not be found in California, and Schwartzmiller learned that Ives had returned to his parents' home in Idaho. Schwartzmiller's attorney telephoned Ives' parents, but Ives did not return the call. Ives testified at the post conviction relief hearing that he did not refuse to testify at Schwartzmiller's trial, he simply declined to return the phone calls made to his parents by Schwartzmiller's attorney.[2] Schwartz-

---

2. After Ives was questioned by attorneys representing Schwartzmiller and the state, Ives was questioned by the judge hearing Schwartzmiller's application for relief, during which the following colloquy occurred:
    BY THE COURT:

miller made no attempt to subpoena Ives in Idaho, nor did he raise any objection or make any request for an adjournment or continuance or for a mistrial to be declared.

We next evaluate the importance of Ives' testimony to Schwartzmiller's defense. Schwartzmiller states that Ives would have testified on two points. First, Ives would have testified that he lived with Schwartzmiller during times pertinent to this case and that he was unaware of any illicit sexual activities at their place of residence. Second, Ives would have testified that the same alleged victims had accused him of illicit sexual activities, and that those charges were false, and that he ultimately was acquitted of those charges—being convicted only of contributing to the delinquency of minors. The record indicates, however, that Ives' testimony also would have included statements incriminating Schwartzmiller. For example, Ives would have testified that Schwartzmiller was sometimes alone with the victims in his bedroom and that Schwartzmiller supplied the victims with beer and marijuana. Thus, tactical considerations could have played a significant role in the decision not to subpoena Ives in Idaho.

■ Although wilful or outrageous government conduct concerning the loss of relevant evidence by itself may constitute a

deprivation of a compulsory process right, *see State v. Huffman,* 65 Or.App. 594, 672 P.2d 1351 (1983), this is not a case involving such conduct. Instead, Schwartzmiller was not diligent in exercising his right to utilize the process powers of the state to obtain witnesses in his favor. We believe the circumstances of this case are similar to those in *United States v. Wolfson,* 322 F.Supp. 798 (D.C.Del.1971), 454 F.2d 60 (3rd Cir.), *cert. denied* 406 U.S. 924, 92 S.Ct. 1792, 32 L.Ed.2d 124 (1972). In that case, the prosecution during the trial brought a potential witness from Canada to be interviewed. After deciding the witness would not be called to testify, the government allowed him to return to Canada. At no time during the trial was the trial court or defense counsel aware of the witness' presence in the state. Sometime after his conviction, Wolfson moved for a new trial or for a judgment of acquittal, stating a denial of compulsory process as grounds for a new trial. Wolfson argued that concealment of a vital witness abridged his constitutional right to compulsory process. The district court disagreed. Because his lack of knowledge was not occasioned by any bad faith on the part of the prosecution, Wolfson was required to show two things to successfully argue a deprivation of compulsory process:

Q. She [Schwartzmiller's attorney] used the phrase "you refused to testify." Were you ever subpoenaed or specifically asked to come to Mr. Schwartzmiller's trial here in Idaho in May of 1981 and testify?

A. I never got no subpoena or anything that I know of.

Q. Did you ever have any contact, any kind of contact, telephone, oral conversations or anything else from anyone that asked you to come and testify?

A. I had a couple with [Schwartzmiller's attorney], but I'm trying to realize if that was before or after. I'm not sure if there was any before, maybe one call before, because I—usually when she called, she talked to my mom and, so.

Q. Were you living with your folks in Placerville?

A. Yeah. And she told me they wanted me to testify at that—at his trial.

Q. In other words, you didn't go to Placerville to hide out?

A. No.

Q. Your folks live there?

A. I think everybody knows I live there, or knows of that place there that would—you know, find me if—you know.

Q. Your folks live in Placerville, your parents?

A. Yes.

Q. How long have they lived in Placerville?

A. Oh, it's been about five years now, six years maybe.

Q. So at least in '81 at the time of the trial, they were living in Placerville?

A. Oh, yes.

Q. And had for some time before that?

A. Yes.

Q. Well, did you tell [Schwartzmiller's attorney] when she contacted you, if it was before the trial, that you would refuse to testify?

A. I don't believe I ever told anybody over the phone or anything that I refused to testify.

*First,* there must be a showing (a) that the potential witness is competent to testify and (b) that he possesses material, relevant evidence having some tendency to aid the defendant's case. *See Thompson v. United States,* 372 F.2d 826, 828 (5th Cir.1967). *Second,* there must be a showing (a) that some effort was made to obtain the appearance of the witness or that an attempt has been made to obtain the evidence of the witness by deposition or otherwise and (b) that some notice was given to the prosecution or that the prosecution was, in fact, aware of the defendant's need for the witness.... [Emphasis original.]

322 F.Supp. at 820. Assuming that the witness was competent and could have given material and relevant testimony, Wolfson failed to meet the second requirement.

The record is completely devoid of any indication that the prosecution was afforded actual notice of the defendants' need for [the witness].... Neither Taylor nor any other defense counsel raised any objection or made any demand upon the government for [the witness] to be brought down from Canada, nor was any request for an adjournment or continuance or for a mistrial to be declared made at the time. [Citations and footnote omitted.] The trial continued for another nine days with no objection or request for [the witness'] presence being made by the defendants or any of their counsel.

322 F.Supp. 820–21.

The sixth amendment guarantees a right to compel the presence at trial of favorable witnesses, it does not relieve a criminal defendant of his burden to request that the witness be subpoenaed. *See Ferrari v. United States,* 244 F.2d 132 (9th Cir.1957) *cert. denied* 355 U.S. 873, 78 S.Ct. 125, 2 L.Ed.2d 78. Paraphrasing *Wolfson;*

**3.** Idaho Criminal Rule 16 also requires the prosecuting attorney to disclose any information in his possession "which tends to negate the guilt of the accused as to the offense charged...." We do not discuss Rule 16 separately because the prosecutor's responsibility under the due process clause and under Rule 16 appears to be

It appears to this court that the failure of the defense counsel to make any request of either the government or the court to assist in getting [Ives] to testify or to plainly indicate that [Ives'] nonappearance would prejudice [Schwartzmiller's] case clearly demonstrates that this issue is a mere afterthought and that there was no actual violation of [the defendant's] right to compulsory process.

*United States v. Wolfson,* 322 F.Supp. at 822.

## II

■ Nor are we persuaded by Schwartzmiller's due process argument. Although due process requires that the accused be informed of exculpatory evidence in the prosecutor's possession, "the prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." *United States v. Agurs,* 472 U.S. at 108, 96 S.Ct. at 2399. A defendant has been denied a fair trial if the omitted evidence would create a reasonable doubt that did not otherwise exist.[3] *Id. See also State v. Leatherwood,* 104 Idaho 100, 656 P.2d 760 (Ct.App.1982).

■ We do not believe the prosecutor concealed evidence that, if admitted at trial, would have created a reasonable doubt in the jurors' minds. The evidence allegedly concealed was a report of the conversation between Ives and an FBI agent, prepared as a part of the federal investigation. Exhibit 6 contains Ives' statements that he did not witness sexual activities between Schwartzmiller and the victims. The statements appear to relate to dates not relevant to the charges on which Schwartzmil-

coextensive. *See State v. Brown,* 98 Idaho 209, 560 P.2d 880 (1977) footnote 2; *State v. McCoy,* 100 Idaho 753, 605 P.2d 517 (1980) (embezzlement conviction reversed withheld information might have created a reasonable doubt in the minds of the jurors).

ler was convicted. Even if the statements are read more broadly, however, the statements in themselves would not create reasonable doubt in a juror's mind, although they do indicate Schwartzmiller was discrete. The district court's finding that Exhibit 6 would not have created a reasonable doubt in the jurors' minds is supported by competent and substantial evidence.

The order denying Schwartzmiller's application for relief is affirmed.