704 P.2d 944

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Ausencio GARZA, Defendant-Appellant.**

No. 14891.

Court of Appeals of Idaho.

July 31, 1985.
Petition for Review Denied
Nov. 20, 1985.

Wayne P. Fuller, Caldwell, for defendant-appellant.

Jim Jones, Atty. Gen. by Lynn E. Thomas, Sol. Gen., Myrna A. I. Stahman, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

BURNETT, Judge.

Ausencio Garza stands convicted by a jury of delivering a controlled substance (heroin). He is serving a fixed sentence of ten years. On appeal he contends (1) that he was improperly bound over to the district court for trial; (2) that his right to compulsory process for obtaining witnesses was violated; (3) that a motion in limine, seeking to prevent impeachment by evidence of a prior felony if he testified, was erroneously denied; (4) that expert testimony identifying the controlled substance should have been excluded; and (5) that the

sentence was unduly harsh. We affirm the judgment of conviction.

## I

■ Garza first argues that he was improperly bound over to the district court because the magistrate who signed the commitment order was different from the judge who made the finding of probable cause. Rule 5.1, I.C.R., can be read to imply that the magistrate who holds an accused to answer in the district court should be the same judge who determines probable cause. However, Rule 52, I.C.R., provides that "[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." *See* also I.C. § 19–3702. So long as the probable cause determination actually has been made by a neutral and detached magistrate, we fail to see how any substantial right of the accused is affected by the identity of the magistrate who signs the commitment order.

■ Moreover, if an accused receives a fair trial—a question to which we next turn in this opinion—errors connected with the preliminary hearing will afford no basis for disturbing the judgment of conviction. *State v. Mitchell*, 104 Idaho 493, 660 P.2d 1336, *cert. denied*, 461 U.S. 934, 103 S.Ct. 2101, 77 L.Ed.2d 308 (1983). Accordingly, we find that no reversible error has been shown on this issue.

## II

■ Garza next contends that he was denied his right to obtain, by compulsory process, the testimony of witnesses in his favor. The sixth amendment to the United States Constitution, as applied to the states by the fourteenth amendment, obliges the government, upon request, to make a good faith effort to locate and to secure witnesses favorable to the defense. *See generally Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). "[T]he compulsory process clause gives defendants definite but limited protection: it guarantees not that the state will always succeed in producing witnesses for the defense, but

that it will make an appropriate effort to do so." Westen, *Confrontation and Compulsory Process: A Unified Theory of Evidence for Criminal Cases*, 91 HARV.L. REV. 567, 595 (1978) (hereinafter cited as *Confrontation and Compulsory Process*).

In this case Garza maintains that the state did not do enough to procure the testimony of two potential witnesses—Wes Villines and Rose Saito. Villines, an acquaintance of Garza, was located and subpoenaed. He was available but failed to appear at trial. The district judge denied a motion for a continuance in order to secure Villines' attendance. Saito, who had been a confidential and paid informant for the state, was residing outside Idaho during the trial and could not be located when an effort was made to subpoena her.

## A

■ We first consider the absent but available witness, Villines. When a person is available the state must procure his attendance if he would be a witness *favorable* to the defense, competent to give testimony that is *relevant* and *material*. *Washington v. Texas*, 388 U.S. at 23, 87 S.Ct. at 1925. We will examine each of these criteria in turn.

■ *Favorable Witness.* The sixth amendment divides witnesses into two categories, those "against" the accused and those "in his favor," allocating to the prosecution and defense respectively, "the burden of initiating their production and the risk of losing the benefit of their testimony if that burden is not carried." *Confrontation and Compulsory Process* at 603. The burden of proving that evidence is in the defendant's "favor" is slight. It need only be shown that the witness's testimony would be "potentially useful." *Evans v. Janing*, 489 F.2d 470, 476 (8th Cir.1973). A person is a witness "against" the accused if he is one whose statements the prosecution relies upon in court in its effort to convict the accused; in order to use the statements of such a witness, the prosecution must take the initiative in

identifying and producing him at trial. Conversely, witnesses "in his favor" are all the remaining witnesses whom a defendant wishes to examine after the prosecution has confronted him with its witnesses.

*Confrontation and Compulsory Process* at 604–605.

In this case, when seeking a continuance to procure Villines' attendance, defense counsel made an offer of proof. According to counsel, Villines would have testified that on the same evening when Garza allegedly delivered heroin, Villines saw him inject a powdery substance into his arm with a needle and then say it was "no good." Defense counsel asserted that such testimony could have created a reasonable doubt in the minds of the jurors as to whether the substance Garza later delivered actually was heroin. Although counsel's theory may seem tenuous, we will presume for the sake of discussion that Villines fell into the category of a "favorable" witness.

■ *Relevant Testimony.* "A defendant has no constitutional right to produce witnesses whose testimony is wholly irrelevant to his defense." Westen, *Compulsory Process II*, 74 MICH.L.REV. 191, 205 (1975) (hereinafter referred to as *Compulsory Process II*). Evidence is said to be relevant if it tends to establish a material proposition. E. CLEARY, McCORMICK ON EVIDENCE § 185 (3d ed. 1984). Rule 401, Idaho Rules of Evidence, offers this traditional formulation:

> "Relevant Evidence" means evidence having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Therefore, the defendant has a constitutional right to present any evidence which may reasonably be deemed to establish the existence of facts in his favor. *Compulsory Process II* at 207.

If reasonable minds could differ as to whether proffered evidence is relevant, the constitutional standard allows it to be admitted. In this case, Villines' proffered testimony arguably was relevant. It could have had a tendency to make more likely a determination that Garza did not actually deliver heroin on the night in question.

■ *Material Testimony.* Materiality goes to the weight of the evidence. Factors in determining materiality include the relative importance of the issue, the extent to which the issue is in dispute, the number of other witnesses who have testified on the issue and the credibility of the witness in relation to other witnesses. *Compulsory Process II* at 225. If the evidence is material, its exclusion would be prejudicial. Conversely, exclusion of immaterial evidence would be harmless. "[A] finding of prejudicial error is equivalent to a finding of materiality. In either case, the court must determine whether the constitutional error was sufficient to justify a new trial." *See Compulsory Process II* at 217–218. In constitutional terms, evidence is material if it would create a reasonable doubt in the minds of the jurors that did not otherwise exist. *State v. Schwartzmiller*, 108 Idaho 329, 699 P.2d 429 (Ct.App. 1985); *State v. Leatherwood*, 104 Idaho 100, 656 P.2d 760 (Ct.App.1982).

■ As noted later in this opinion, the identity and composition of the substance allegedly delivered by Garza were highly technical questions. Expert testimony, based upon scientific tests, was adduced. As will be seen, the tests disclosed heroin of very poor quality. This evidence would have explained Garza's purported remark, "no good," leaving little room for Villines' proffered testimony to make an impact on the case. In our view, the testimony could not have created a reasonable doubt that did not otherwise exist. We conclude that Villines' testimony, although arguably favorable and relevant, was not material. Garza's right to compulsory process was not impermissibly infringed by the judge's refusal to continue the trial in order to procure Villines' attendance.

## B

We next turn to the unavailable witness, Saito. She was an eyewitness to the alleged delivery of heroin. Professing a fear of Garza, she was reluctant to cooperate with efforts to obtain her testimony. During pretrial discovery she gave what amounted to a deposition by written questions. Her answers to the questions were closely similar to testimony later presented at trial by the narcotics agent who took delivery of the heroin. The only notable difference appeared to be how many times Garza left and returned to a bar while he and the agent discussed the drug sale.

 The state has no obligation under the compulsory process clause to produce a witness who is no longer available, unless the state is responsible for the witness's absence. *E.g., Taylor v. Minnesota,* 466 F.2d 1119 (8th Cir.1972), *cert. denied,* 410 U.S. 956, 93 S.Ct. 1425, 35 L.Ed.2d 689 (1973). In *Schwartzmiller v. State, supra,* we recently observed:

> Cases involving unavailable witnesses reveal that appellate review focuses on three relevant factual inquiries in determining a compulsory process claim: [1] the nature and extent of government conduct, if any, that contributed to the unavailability of the witness, [2] the importance of the evidence to the defendant's case, and [3] the defendant's diligence in exercising his sixth amendment right. Each inquiry is important, but the effect in a particular case of just one or two of the factual events may result in a deprivation of compulsory process.

108 Idaho at 330–31, 699 P.2d at 430–31. In *Schwartzmiller* we held that the defendant had not diligently exercised his right to utilize the process power. However, such is not the case here. Garza vigorously sought to utilize the process powers at his disposal. Consequently, our inquiry is narrowed to the remaining elements: government conduct contributing to the unavailability of the witness, and the importance of the witness's testimony to the accused's defense.

The record shows that the state was solicitous of Saito's concerns for her safety. At one point the prosecutor sought a protective order against pretrial appearances by Saito. But the record contains no evidence that the state caused or encouraged her disappearance at the time of trial. Consequently, this is not a case where the government's conduct could be viewed as the dominant criterion, resulting in a determination that the accused's right to compulsory process had been violated regardless of the importance of the witness to the defense.

 Saito's importance as a witness turned upon the same factors previously examined with respect to witness Villines— whether she was *favorable* to the defense and whether she was competent to give *relevant* and *material* testimony. A witness is favorable, it will be recalled, if he or she can provide testimony useful to the defense. In this case, Garza sought to use Saito's testimony to impeach that given by the narcotics agent. Her testimony arguably would have been relevant to attack the agent's credibility and his ability to recall events surrounding the drug transaction. However, as in the case of the witness Villines, we believe such testimony would not have been material. The discrepancies between the agent's testimony and Saito's prospective testimony, as previewed by the answers to written questions, were so insignificant that the impact of any resultant impeachment would have been negligible. It could not have created a reasonable doubt of Garza's guilt. Accordingly, we conclude that the state's failure to secure Saito's attendance as a witness did not violate Garza's right to compulsory process.

## III

 We now turn to the question of impeachment. At the outset of trial, the district court denied a motion in limine, seeking to prevent the use of a prior conviction for delivering a controlled substance to impeach Garza if he chose to

testify. Garza ultimately elected not to take the witness stand.

The United States Supreme Court recently held, in *Luce v. United States*, 469 U.S. ——, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), that in order to "raise and preserve for review a claim of improper impeachment with a prior conviction, a defendant must testify." 469 U.S. at ——, 105 S.Ct. at 464. In a concurring opinion, Justice Brennan identified two rationales for the Court's decision. First, the weighing process required under Rule 609(a), Federal Rules of Evidence, by which the probative value of sensitive evidence is balanced against its unfair prejudicial impact, can be evaluated adequately on appeal only when the specific factual context of a trial has unfolded. Second, if the defendant declines to testify, the appellate court is handicapped in making the required harmless error determination should the district court's ruling prove to be incorrect.

These rationales may not dovetail neatly with the rules of evidence and procedure in every state. *See State v. McClure*, 298 Or. 336, 692 P.2d 579 (1984) (declining to adopt *Luce* due to perceived conflicts with state practice). However, we believe these rationales are applicable to Idaho. Our rules of evidence, though not identical to the federal rules, follow the practice of weighing probative value and unfair prejudice. *See generally State v. Pierce*, 107 Idaho 96, 101–03, 685 P.2d 837, 842–44 (Ct.App. 1984). Harmless error determinations also are made on impeachment issues. *Id.* at 108, 685 P.2d at 849 (Swanstrom, J., concurring specially). Accordingly, we adopt *Luce* and hold that a criminal defendant must take the stand if he wishes to preserve on appeal the question of impeachment by a prior felony conviction. Because Garza did not testify, our analysis of the question stops here.

## IV

Garza next asserts that expert opinion testimony given by a forensic chemist with the United States Drug Enforcement Agency should have been excluded. Garza argues that the standards and graphs used in the expert's identification of heroin should have been furnished to defense counsel prior to trial and admitted into evidence.

The testimony by the DEA expert chemist was supplemental to testimony by a chemist employed by the State of Idaho. The state chemist ran four tests on the substance sold by Garza. The first two tests were conducted one day after the delivery occurred. The tests revealed the presence of heroin at a two percent level. More than a year later the chemist attempted to confirm the earlier results. Two new tests were completed. The first test produced a negative result, and the second test was inconclusive because the quantity of the substance was insufficient. The substance then was sent to the DEA laboratory. Two more tests were run. The first, an infrared analysis, also proved inconclusive because of the small sample. However, a mass spectrometry was positive for heroin.

The DEA expert determined the presence of heroin by comparing a graph analysis of the tested substance with the graph of a known "standard." The expert testified that such "standards" were obtained from companies or agencies working with controlled substances, e.g., the National Bureau of Standards, United States Pharmacopeia and pharmaceutical companies. The graphs of the tested substance and of the "standard" used in the expert's comparison were not provided to defense counsel as part of the state's response under I.C.R. 16(b). Neither were they brought to trial and offered into evidence.

In his discovery request, Garza asked for any reports of examination and tests covered by Rule 16(b)(5). The Rule states:

Upon written request of the defendant the prosecuting attorney shall permit the defendant to inspect and copy or photograph any results or reports of physical or mental examinations, and of scientific tests or experiments, made in connection with the particular case, or copies thereof, *within the possession, custody or control of the prosecuting attorney,* the existence of which is known or is avail-

able to the prosecuting attorney by the exercise of due diligence. [Emphasis added.]

The DEA expert testified he had not furnished the graphs, or copies of the graphs, to the prosecutor. The laboratory report had been furnished to the prosecutor and Garza's counsel received a copy of it. Defense counsel also received a memorandum from the prosecutor stating the chemist's qualifications, the tests run on the suspected substance and the chemist's opinion. We believe the prosecutor complied with Garza's request for discovery. If defense counsel had desired to examine the graphs, a further, more specific request could have been made. *See generally* Annot., 5 A.L. R.3d 819, § 10 (Supp.1984).

We also uphold the admission of the expert testimony despite failure to introduce the graphs of the tested substance and of the "standard" into evidence. The "standard" used in the mass spectrometry test was obtained from the laboratory's vault and was tested along with the suspected substance. In *State v. Crabb,* 107 Idaho 298, 688 P.2d 1203 (Ct.App.1984), we held that if an expert witness "prepared both the standard for [the drug] and conducted the test on the known substance, he had firsthand knowledge and could describe what he had seen and 'give his expert inferences therefrom.'" *Id.* at 306, 688 P.2d 1211, *quoting from* E. CLEARY, McCORMICK ON EVIDENCE § 14 (3d ed. 1984).

It may be beneficial for the jury to see comparisons of the graphs. However, failure to present them does not, by itself, render the expert opinion testimony inadmissible. The district court in this case correctly refused to exclude the testimony.

### V

Finally, defendant contends that a fixed sentence of ten years was excessive. The trial court possesses discretionary authority to determine an appropriate sentence, within statutory limits. *State v. Delin,* 102 Idaho 151, 627 P.2d 330 (1981). Delivery of a controlled substance carries a maximum penalty of life imprisonment, together with a fine of $25,000. I.C. § 37–

2732(a)(1)(A). Garza's sentence was well within the statutory limits.

Nevertheless, a sentence may be unreasonable, and therefore constitute an abuse of discretion, if it imposes a term of confinement exceeding that required to accomplish the primary goal of protecting society and to achieve any or all of the supplementary goals of deterrence, rehabilitation and retribution. *State v. Toohill,* 103 Idaho 565, 650 P.2d 707 (Ct.App.1982). With consideration given to statutory "good time," the term of confinement imposed by a ten-year, fixed sentence is presumed to be approximately six and two-thirds years. *See generally State v. Miller,* 105 Idaho 838, 673 P.2d 438 (Ct.App. 1983).

The record discloses that Garza had two prior convictions for similar offenses. The judge decided that substantial confinement was necessary to protect society from Garza's repeated drug trafficking. Six and two-thirds years is not excessive in these circumstances. We find no abuse of the judge's sentencing discretion.

The judgment of conviction is affirmed.

WALTERS, C.J., and SWANSTROM, J., concur.