No. 90-069

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

      Plaintiff and Respondent,

  -vs-

RONALD F. TIMBLIN,

      Defendant and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable Joel G. Roth, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Billy B. Miller argued, Miller & Cook, Great Falls,
Montana

      For Respondent:

          Hon. Marc Racicot, Attorney General, Helena, Montana
Carol E. Schmidt argued, Assistant Attorney
General, Helena, Montana
Patrick L. Paul, County Attorney, Great Falls,
Montana

**FILED**

JUL 1 3 1992

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted: June 11, 1992

Decided: July 13, 1992

_____
Clerk

Justice R. C. McDonough delivered the Opinion of the Court.

Ronald Timblin appeals from a judgment of the Eighth Judicial District Court, Cascade County entered after a bench trial. We reverse.

The sole issue to consider on this appeal is: whether the District Court erred in denying a continuance thereby denying Timblin's Sixth Amendment right to compulsory process, and his Fifth Amendment rights to due process and a fair trial. These rights are applicable to the states by reason of the Fourteenth Amendment to the United States Constitution.

During the spring of 1987, Timblin's wife filed for a divorce and Timblin moved out of the family home. On approximately August 22, 1987, Timblin picked up P.T., C.T. and K.T. (his three daughters) for a scheduled visitation. At the time, P.T. was 14 years old. P.T. later reported that Timblin forcibly raped her during the visit. She initially told no one about this incident. Two years later, in 1989, P.T. confided in her boyfriend Matthew and revealed a history of sexual abuse by her father. After consideration, on the following day, Matthew told P.T.'s mother about the abuse. On April 24, 1989 P.T.'s mother contacted the Great Falls Police Department. After an investigation, Timblin was charged with sexual intercourse without consent.

P.T. told the investigating officer that on the day of the incident at Timblin's apartment, he called her into the bathroom to talk about C.T.'s birthday present. She stated that Timblin told C.T. and K.T., her younger sisters, to stay in the living room and

watch television. P.T. reported that after the alleged rape occurred Timblin left the bathroom first. She remained in the bathroom to clean up and put cold water on her face. Later, at the request of the County Attorney, the investigating officer interviewed P.T.'s sisters, C.T. and K.T. Both C.T. and K.T. reported that Timblin called P.T. into the bedroom to talk about C.T.'s birthday present. They stated that P.T. and Timblin were in the bedroom about two minutes, and that P.T. came out of the bedroom first. Both girls stated they were in the living room watching TV at the time of the alleged rape. C.T. stated she saw P.T. and Timblin go into the bedroom but not the bathroom.

Prior to trial, the State issued subpoenas to both C.T. and K.T. Apparently, the State released the subpoenas one or two days prior to the trial. At the trial, P.T.'s story changed somewhat. Counsel for the defendant then had subpoenas issued for C.T. and K.T. but was unable to serve them. Filed affidavits made by the process server and a private investigator showed that the girls were hidden by their maternal grandmother, and/or mother thus preventing service.

The statements taken by the investigating officer had revealed some inconsistencies between the girls' stories, and the story of the victim. However, it was not revealed to the defense until trial that P.T.'s initial story had changed. Prior to P.T.'s in-court testimony, Timblin was unaware that P.T. had made more than one statement to the investigating officer. The State did not notify Timblin about the change in P.T.'s testimony. P.T.

testified at trial that her father first called her into the bedroom, then they went into the bathroom. P.T. stated that Timblin told the younger girls to take out the garbage. P.T. further testified that the girls stayed outside and played. This was not the version told by C.T. and K.T.

P.T.'s original and only typed statement was different than her trial testimony; the detective knew about her change in testimony prior to trial. The defendant was unaware of the change in the story until the trial.

During the trial, after the process server was unsuccessful in serving the subpoenas, Timblin made a motion to compel the State to produce C.T. and K.T., and a motion to continue the trial until the witnesses could be subpoenaed. The District Court denied Timblin's motions. Timblin was found guilty by the court and sentenced to 35 years in the Montana State Prison, with five years suspended and without credit for time served. This appeal followed.

Our standard of review is to determine whether the trial court abused its discretion in denying the motion for a continuance. Steer, Inc. v. Dept. of Revenue (1990), 245 Mont. 470, 803 P.2d 601.

On the second day of the two day bench trial, the District Court denied Timblin's motion to continue until Timblin could locate and serve subpoenas on C.T. and K.T. The District Court, for purposes of the record, stated that its calendar was full. It further stated that Timblin should have subpoenaed C.T. and K.T. prior to trial. We agree with the District Court that a criminal

4

defendant must plead and prove his or her own case, thus calling witnesses in his or her own defense. See Ferrari v. United States (9th Cir. 1957), 244 F.2d 132, 142, cert. denied sub nom Cherpakov v. United States (1957), 355 U.S. 873. In this instance, due to the lack of notice of changed testimony, a continuance would have been proper.

Timblin argues that under Schwartzmiller v. State (Idaho App. 1985), 699 P.2d 429, and Singleton v. Lefkowitz (2nd Cir. 1978), 583 F.2d 618, he was denied his rights to compulsory process, due process, and a fair trial. Schwartzmiller set forth three criteria in determining whether compulsory process has been denied:

> 1. The nature and extent the government conduct contributed to the unavailability of the witness;
> 2. The importance of the evidence to the defendant's case; and
> 3. The defendant's diligence in exercising his Sixth Amendment rights.

Schwartzmiller at 430-431.

As Schwartzmiller pointed out, each inquiry is important, but all three need not be satisfied. Schwartzmiller at 431. In the case before us, after the change of testimony on the part of P.T., the importance of the younger girls' testimony increased significantly. Timblin diligently had subpoenas issued for C.T. and K.T., hired an investigator to help locate them, and made the proper motions in order to accomplish service.

In Singleton the Second Circuit held that the defendant was denied his right to compulsory process when the trial court refused an adjournment to secure the presence of a witness. The court stated that denial of a defendant's right to present a defense

5

deprives the defendant the right to a fair trial. <u>Singleton</u> at 625. Additionally, due process guarantees that a criminal defendant will be treated with the fundamental fairness essential to the very concept of justice. <u>Schwartzmiller</u> at 430. (citations omitted)

We conclude that the District Court abused its discretion in denying Timblin's motion for continuance. A reasonable continuance would have satisfied Timblin's constitutional rights. The presence of the two girls at trial would have allowed Timblin to test the credibility of the victim. The change in P.T.'s testimony goes to her credibility. The credibility of a witness is of utmost importance between a sexual abuse victim and a denying defendant. It is often the only defense available.

For the reasons stated above, we remand to the District Court for a new trial.

Justice

We Concur:

_____
Chief Justice

Justices

6

Chief Justice J. A. Turnage, dissenting:

I respectfully dissent.

The majority opinion of the Court reverses the bench trial conviction of the defendant of sexual intercourse without consent committed upon the person of his then fourteen-year-old natural daughter, P.T., and orders a new trial for defendant.

The sole basis for the majority's decision to reverse the conviction is the conclusion that the trial judge abused his discretion in refusing counsel's motion for a continuance made during the trial for the purpose of allowing defendant to subpoena his two other natural daughters, C.T. and K.T. At the time of the offense, C.T. and K.T. were nine and ten years of age respectively. They were approximately ages eleven and twelve at the time of trial.

From the date of filing of the information on June 6, 1989, defendant was aware that C.T. and K.T. were the potential witnesses referred to in the information and potentially witnesses to be called at the trial. C.T. and K.T. had been subpoenaed by the State but were not called to testify and had been released from subpoena prior to trial.

Defendant had the opportunity prior to trial to depose C.T. and K.T. Defendant's counsel did notice a deposition of C.T., and thereafter her deposition was taken on October 16, 1989, with defendant's counsel present along with the deputy county attorney.

7

The defendant, having knowledge of these potential witnesses, chose not to subpoena them for testimony on his behalf.

The State is under no obligation to call all of the witnesses that it subpoenaed. It is the duty of the defendant and his counsel to subpoena their own witnesses and prepare for the defendant's case. The defense is not entitled to rely upon the witnesses subpoenaed by the State.

Defendant's counsel's request for a continuance for the purpose of subpoenaing C.T. and K.T., mid-trial, was based on an inconsistency in the testimony of P.T. as to whether the offense was committed in a bathroom or a bedroom in defendant's residence, and whether C.T. and K.T. were in the residence all the time or whether they were outside part of the time during the commission of the offense.

In my view, any direct or cross-examination of C.T. or K.T. would have been cumulative and not probative to a degree that would have created reasonable doubt or altered the decision of the court.

In bench trials, the trial judge should be more willing to consider a reasonable request for continuance. The delay would not, in all probability, be as inconvenient as it may be in a jury trial. In this case, however, the trial judge did not abuse his discretion in denying the continuance.

The overwhelming testimony submitted by the State in proof of the defendant's guilt, which is plain from the totality of the

8

record, leaves no room for a reversible error in the denial of the motion for continuance. At most, it was a harmless error, and I do not concede that it was error in any event.

The totality of this record, when carefully reviewed, establishes from the testimony of the victim, P.T., that defendant had committed sexual assaults upon her commencing from the time she was approximately five years of age and continuing over several years. The sexual assaults commenced with sexual fondling and escalated to acts of sexual intercourse, including oral intercourse. These acts occurred with an astounding frequency, ending on or about August 23, 1987, with the act on which defendant stands convicted.

The State made an appropriate motion under Rule 404(b), M.R.Evid., to introduce prior acts of the defendant and, after briefing and argument, the Court granted the State's motion. The prior acts were testified to in much detail by the victim, P.T. That testimony included the fact that the defendant had signed a deferred prosecution agreement on November 20, 1987, wherein he admitted that approximately three years prior to that date, he had committed the offense of sexual assault upon the victim in this case, his daughter P.T. Pursuant to the agreement, his prosecution for that offense was deferred for two years. The agreement was entered into evidence without objection as State's Exhibit 1.

Direct or cross-examination of C.T. and K.T. concerning an event that occurred when they were nine and ten years of age, over two years prior to trial, relating to whether or not they were present in the residence and whether the victim and the defendant were in the bedroom or the bathroom during the commission of the offense, simply does not rise to a probative value that warrants a reversal of this conviction.

I would affirm.

_____
Chief Justice