864 P.2d 162

STATE of Idaho, Plaintiff–Respondent,

v.

Vincent Randolph WAGGONER, Defendant–Appellant.

No. 19598.

Court of Appeals of Idaho.

Oct. 4, 1993.

Petition for Review Denied Dec. 14, 1993.

Manweiler, Bevis & Cameron, P.A., Boise, for defendant-appellant. David D. Manweiler argued.

Larry EchoHawk, Atty. Gen., and Michael A. Henderson, argued, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge, Pro Tem.

Vincent Waggoner was found guilty by a jury of aiding and abetting a robbery, first degree burglary and misdemeanor assault. He received concurrent sentences of ten to twenty years, ten to fifteen years and ninety days in jail respectively, with credit for time served. In this appeal from the judgment of conviction, Waggoner alleges error in the denials of his motion to suppress, his motion to continue the trial and his attorney's motion for mistrial. He also claims that the court erred in admitting a photograph of the injured robbery victim and in refusing to give an instruction on circumstantial evidence. For the reasons given below, we affirm.

The charges against Waggoner stem from his activities after leaving a bar in Boise on October 13, 1990. Waggoner and others had seen another bar patron (the victim) paying for drinks with hundred-dollar bills and generally flashing his money around. A woman, acquainted with Waggoner, left the bar with the victim and his friend. Waggoner and another man followed them to the friend's apartment where, according to a plan devised at the bar, they intended to rob the man who had been flashing his money. The men entered the victim's apartment on a cue from the woman, beat the victim and took his wallet containing about $1,800. Waggoner, who had jumped on the victim's friend, held him down and threatened him, allegedly holding a knife to his throat, to keep him from interfering in the melee to wrest the wallet from the victim.

Waggoner was arrested by police in the state of Washington on a fugitive warrant from Idaho resulting from the investigation of this robbery. On April 17, 1991, through extradition proceedings, he was transported back to Idaho. The next day,

he was interviewed by Boise detectives who tape recorded Waggoner's statement about his participation in the robbery, after he had been advised of his constitutional rights and had signed a waiver of those rights. The state filed its information against Waggoner on May 9, and arraignment was held on May 10, 1991.

## MOTION TO SUPPRESS

At trial, the defense argued its motion to suppress the statement made to the detectives, but the district court denied the motion. In appealing the denial of his motion to suppress, Waggoner claims error in the court's findings that "you knew an attorney had been hired" and that he had voluntarily executed a waiver of his rights prior to disclosing his participation in the robbery. He asserts that the statement he gave to the officers was obtained in violation of his Sixth Amendment right to an attorney. He also asserts that as a result of this violation, his statement cannot be held to have been voluntary, and should have been suppressed.

■ The Sixth Amendment provides in part that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the assistance of counsel for his defense." U.S. Const., Amend. VI. The accused is entitled to counsel at any "critical stage of the prosecution." *United States v. Wade,* 388 U.S. 218, 237, 87 S.Ct. 1926, 1937, 18 L.Ed.2d 1149 (1967). This right to counsel attaches at or after the time that adversary judicial proceedings have been initiated against the accused. *Kirby v. Illinois,* 406 U.S. 682, 688, 92 S.Ct. 1877, 1881, 32 L.Ed.2d 411 (1972). The commencement of the criminal prosecution, whether by way of formal charge, preliminary hearing, indictment, information, or arraignment, marks the "critical stage of the prosecution" to which the guarantees of the Sixth Amendment are applicable. *Id.* at 690, 92 S.Ct. at 1883.

**1.** An argument, similar to the one raised by Waggoner, that extradition is an "arraignment or similar proceeding" that triggers Sixth Amendment protection was recently rejected in

■ Waggoner first contends that extradition is a critical stage of the criminal proceedings, thereby triggering the Sixth Amendment protection. He does not cite precedent for this position, and the authority is to the contrary. Under the Uniform Criminal Extradition Act, codified in Idaho at I.C. §§ 19–4501 through 4527, a person arrested upon a fugitive warrant has the right to demand legal counsel to test the arrest. I.C. § 19–4510. The authority of the arresting state is limited to determining that the extradition documents are in order, that the petitioner is charged with a crime in the demanding state, that the petitioner is the person named in the request for extradition and that the petitioner is a fugitive. *Kerr v. Watson,* 103 Idaho 478, 649 P.2d 1234 (Ct.App.1982). The statutory right to counsel does not give rise to a constitutional right to an attorney because extradition is not a critical stage of the criminal proceedings. *See Dunkin v. Lamb,* 500 F.Supp. 184 (D.Nev.1980).

■ Because the only purpose of extradition is the return of the fugitive to the place of the alleged offense, his constitutional rights, other than the present right to personal liberty, are not involved. *People ex rel. Shockley v. Hardiman,* 152 Ill.App.3d 38, 105 Ill.Dec. 240, 504 N.E.2d 109 (1987).[1] It also has been held that an accused's right to counsel did not attach when he was arrested on a fugitive warrant and waived extradition proceedings. *Judd v. Vose,* 813 F.2d 494 (1st Cir.1987). "Because of the summary nature of extradition proceedings, the scope of inquiry surrounding extradition proceedings does not include the kind of preliminary inquiry traditionally intervening between initial arrest and trial." *Beauchamp v. Elrod,* 137 Ill. App.3d 208, 92 Ill.Dec. 86, 484 N.E.2d 817, 819 (1985). *See also Michigan v. Doran,* 439 U.S. 282, 288, 99 S.Ct. 530, 535, 58 L.Ed.2d 521 (1978). The Sixth Amendment right to counsel did not attach with the extradition proceedings.

*People v. Young,* 153 Ill.2d 383, 180 Ill.Dec. 229, 607 N.E.2d 123 (1992), *petition for cert. filed* March 4, 1993.

■ The admissibility of Waggoner's statement, which was made at a time prior to the indictment, does not turn on the presence of counsel at the interrogation. The exclusionary rule as a sanction against depriving an accused of his Sixth Amendment right to counsel is not applicable to pre-indictment confrontation. *Kirby v. Illinois, supra.* We find no basis to suppress Waggoner's statement on Sixth Amendment principles.

We will also address the question of whether the statement should be excluded because it was obtained in violation of Waggoner's Fifth Amendment right to counsel. Although the right-to-counsel issue was framed in terms of a Sixth Amendment argument in appellant's brief, a majority of the cases relied upon in the argument concern the right to counsel during custodial interrogation, which implicates Fifth Amendment protections. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Waggoner argues on appeal that *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), imposes a two-step inquiry to assess the admissibility of an accused's statements made during custodial interrogation. Waggoner asserts that because the district court failed to address the threshold question of whether the defendant had invoked his right to counsel, it was error for the court to determine the validity of his waiver—the second step of the *Smith* inquiry. We do not agree. The holding of *Smith* is that only the question of waiver, which is distinct from the question of invocation of the right to counsel, can be affected by an accused's later responses to continued questioning in the face of the accused's unmet request for counsel. Invocation and waiver "must not be blurred by merging them together." *Id.* at 98, 105 S.Ct. at 494.

■ A statement made in the absence of counsel will be admissible in evidence if it is the product of a voluntary, knowing and intelligent waiver of the previously invoked right to have counsel present. *State v. Blevins,* 108 Idaho 239, 697 P.2d 1253 (Ct.App.1985). Once the right to counsel is

exercised by the accused, "the interrogation must cease until an attorney is present." *Miranda v. Arizona, supra* 384 U.S. at 474, 86 S.Ct. at 1628. Further, an accused, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused initiates further communication, exchanges, or conversations with the police. *Edwards v. Arizona,* 451 U.S. 477, 485, 101 S.Ct. 1880, 1885, 68 L.Ed.2d 378 (1981). "The fruits of [such an] interrogation initiated by the police ... could not be used against [the accused]." *Id.* at 488, 101 S.Ct. at 1885.

Although Waggoner signed a waiver of rights form on April 18, 1991, he asserts that the waiver was not validly given because the detectives had withheld information that his family had hired counsel for him and that his counsel wanted to talk to him. In effect, Waggoner contends that he invoked his right to counsel through his family's efforts, and he construes the conduct of the detectives as a denial of access to his counsel.

■ Because there is no evidence in the record that Waggoner ever requested to speak to an attorney while being questioned, we cannot conclude that he was denied his right to have counsel present. Furthermore, the question of whether the conduct of the police or the defendant's ignorance of the attorney's efforts to reach him taints the validity of his waiver and requires exclusion of his statement has been answered in the negative in the corresponding factual setting of *Moran v. Burbine,* 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986):

> Events occurring outside of the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right.

\* \* \* \* \* \*

No doubt the additional information would have been useful to [defendant]; perhaps even it might have affected his decision to confess. But we have never

read the Constitution to require that the police supply a suspect with a flow of information to help him calibrate his self-interest in deciding whether to speak or stand by his rights. Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law.

*Id.* at 422, 106 S.Ct. at 1141. (Citations omitted.) *See also Terry v. LeFevre*, 862 F.2d 409 (2d Cir.1988) (no legal support for the argument that mother could invoke the right to counsel on behalf of her son); *Rider v. State*, 570 N.E.2d 1286 (Ind.Ct. App.1991) (defendant is the only one who can invoke his right to counsel). Waggoner was fully informed of his rights; he did not at any time request an attorney nor did he refuse to speak with the detectives until an attorney was present; and he has presented no claims of coercion that could invalidate his waiver. We hold that Waggoner knowingly, intelligently and voluntarily waived his right to have an attorney present during his talk with the detectives. We also hold that the statement elicited from Waggoner was properly admitted at trial.

### MOTION FOR MISTRIAL

Waggoner's second issue on appeal centers on the district court's denial of his counsel's motion for mistrial. The request that the court order a mistrial was grounded on an ethical conflict created by Waggoner taking the stand, contrary to the advice of his counsel, which conduct impeded counsel from rendering effective assistance. Waggoner appears to argue that counsel should have been allowed to withdraw as defense counsel or be granted a mistrial, as the appropriate response to the dilemma forced upon counsel by the conduct of the defendant.

Counsel disclosed to the court, outside the presence of the jury, that the defendant intended to exercise his constitutional right to testify, against the advice of counsel. Counsel informed the court that Waggoner would testify in narrative form and that counsel would not otherwise participate in presenting the testimony, implying that there was a basis to believe the testimony would be false. Waggoner did testify, but only after he had responded to the court's questions about the wisdom of disregarding the advice of his counsel. At the completion of his testimony, which wrapped up the presentation of the defense witnesses, counsel moved for mistrial outside of the presence of the jury. The court denied the motion and advised counsel to continue to represent his client to the best of his ability.

A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives him of a fair trial. I.C.R. 29.1. The court's refusal to declare a mistrial will be disturbed only if the event which precipitated the motion for mistrial, viewed retrospectively, constituted reversible error. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 275 (Ct.App. 1983).

As held by the United States Supreme Court considering the issue of an attorney's revelation to the court of his client's perjury,

[counsel]'s admonitions to his client can in no sense be said to have forced [defendant] into an *impermissible* choice between his right to counsel and his right to testify as he proposed for there was no *permissible* choice to testify falsely. For defense counsel to take steps to persuade a criminal defendant to testify truthfully, or to withdraw, deprives the defendant of neither his right to counsel nor the right to testify truthfully.

*Nix v. Whiteside*, 475 U.S. 157, 173, 106 S.Ct. 988, 997, 89 L.Ed.2d 123 (1986). Whiteside's counsel prevailed in deterring his client's proposed false testimony. Waggoner's counsel, by his actions, compromised neither his client's rights nor his

ethical obligations under the rules of professional conduct. Counsel met his duty of candor to the tribunal by advising of his client's intent to possibly perjure himself. Idaho Code of Professional Conduct, comment to Rule 3.3, Idaho State Bar Deskbook, p. E–41 (1992). By presenting his client's testimony in narrative form, counsel did not assist the perjury by his client. *Id.* at pp. E–6–7, comment to Rule 1.2(d). *See also Nix v. Whiteside, supra,* at 170, n. 6, 106 S.Ct. at 996, n. 6. The court's decision to deny Waggoner's mistrial motion was not error.

### ADMISSION OF PHOTOGRAPH

Waggoner filed a pretrial motion to exclude an eight-by-ten inch photograph of the victim of the robbery. The court ruled the photograph admissible stating that the photograph was relevant and not inflammatory. Waggoner appeals this ruling, reasserting his principal argument that the photograph was irrelevant to prove the state's case because the victim's injuries were not inflicted by Waggoner. Waggoner contends that the photograph was lacking in probative value and that its admission unfairly prejudiced his defense to the charge of aiding and abetting the robbery.

Where evidence is relevant to a material issue, it is admissible; however, the court has discretion to exclude it upon determining that its probative value is outweighed by its potentially unfair prejudicial impact. *State v. Clark,* 115 Idaho 1056, 1059, 772 P.2d 263, 265 (Ct.App.1989), *citing* I.R.E. 403. Here, the photograph taken by an officer on the morning following the robbery, showed the victim's face with blackened, swollen eyes, cuts and bruises. The state claimed the photograph was relevant to depict the amount of force used to subdue the victim and steal his money. Although Waggoner was not directly responsible for striking the victim, the injuries suffered in the robbery, were due in part to Waggoner's role in keeping the victim's companion from helping him. We conclude that no unfair prejudice resulted from the admission of the photograph showing injuries which were also described by several witnesses who testified at the trial. We hold that the court did not abuse its discretion in allowing exhibit No. 6, the photograph of the victim who was beaten in the robbery, to be admitted into evidence.

### MOTION TO CONTINUE

When a defense witness failed to appear at trial, counsel moved for a continuance, explaining that he had difficulty contacting the witness and had been unsuccessful in his efforts to subpoena her. Defense counsel had informed the prosecutor that he intended to call as a witness a woman who knew Waggoner and who worked at the bar where Waggoner and the robbery victim had met. In his offer of proof, counsel advised that the witness would testify to her knowledge that Waggoner in fact made custom jewelry and that he and the victim had talked about a jewelry deal while they were at the bar prior to the robbery. She would also testify as to Waggoner's physical appearance that night at the bar. The court refused to grant any delay of the trial.

Waggoner claims that the court erred in denying his motion to continue the trial because of the unavailability of a witness. He asserts that his offer of proof was sufficient to establish the materiality of the absent witness's proposed testimony, as well as the diligence of defense counsel's efforts to have the witness appear at trial. He also argues that this error is of constitutional significance because he was thereby deprived of his right to compulsory process under the federal and state constitutions. Waggoner's latter argument, which we acknowledge is being raised for the first time on appeal, will nevertheless be reviewed because it raises a question of fundamental error. *See State v. Mauro,* 121 Idaho 178, 180, 824 P.2d 109, 111 (1991).

A defendant on motion for a continuance, moving on the ground of absent witnesses, is required to give the names of his proposed witnesses, show what facts he intends to prove by them, that the witness is not absent by his procurement or

consent, that the witness' testimony is material to his defense, that he has used diligence in attempting to procure his attendance at the trial, and has failed to do so and that there is a reasonable probability that he can and will procure his attendance at a later term if the continuance is had.

    \*     \*     \*     \*     \*     \*

[A]n application for continuance is addressed to the sound judicial discretion of the court and its ruling will not be set aside unless such discretion was abused. *State v. McClurg,* 50 Idaho 762, 779, 300 P. 898, 904 (1931).

■ As shown by the record, the offer of proof would dispute trial testimony given by the prosecution's witness as to the length of Waggoner's hair and beard the night of the robbery and whether there had been a conversation about engaging Waggoner to make a piece of gold jewelry. This information, though it may be relevant to what occurred in the bar, neither supports nor denies Waggoner's role in the planning or execution of the robbery which took place at the apartment. We agree with the court's ruling that the proffered testimony was not material to the defense. We hold that the court's denial of the continuance was adequately justified by the lack of materiality and was not an abuse of judicial discretion.

■ As to Waggoner's compulsory process claim, our holding on the question of the materiality of the absent witness's testimony also leads us to dispense with any obligation by the state to make good faith efforts to procure witnesses favorable to the defense. Waggoner has described only his counsel's efforts to contact the witness, which were unsuccessful. We do not decide if these efforts represented due diligence on counsel's part. However, there are no allegations that the state in any way acted to keep the witness from the trial. "The state has no obligation under the compulsory process clause to produce a witness who is no longer available, unless the state is responsible for the witness's absence." *State v. Garza,* 109 Idaho 40, 44, 704 P.2d 944, 948 (Ct.App.1985). More importantly, "the state has no obligation under the compulsory process clause to produce witnesses on the defendant's behalf unless he himself *requests* that they be produced." *Id.* Additionally, our inquiry into factors other than the materiality of the testimony, including the nature and extent of the government's conduct contributing to the unavailability of the witness and the diligence of the defendant in exercising his Sixth Amendment right, convinces us that Waggoner was not deprived of compulsory process. *See Schwartzmiller v. State,* 108 Idaho 329, 331, 699 P.2d 429, 431 (Ct.App. 1985). Based upon our review of the record, Waggoner's compulsory process claim fails in both respects.

### FAILURE TO GIVE A *HOLDER* INSTRUCTION

■ Finally, Waggoner asserts that the district court's refusal to give his proposed jury instruction No. 13, which was derived from *State v. Holder,* 100 Idaho 129, 594 P.2d 639 (1979), constituted reversible error. He argues that because circumstantial evidence came in at trial regarding his intent to commit the crimes charged, he was entitled to have a *Holder* instruction given to the jury. The proposed instruction, which began as follows,

> Where the case of the State rests substantially or entirely on circumstantial evidence, you are not permitted to find the Defendant guilty of the crimes charged....

was rejected by the court because the case against Waggoner was based primarily on the direct testimony of the two victims of the robbery and assault, the testimony of a witness who helped plan the robbery, and Waggoner's own confession. A *Holder* instruction " 'where the state's evidence was said not to be *entirely* circumstantial' " was not required. *State v. Phillips,* 123 Idaho 178, 182, 845 P.2d 1211, 1215 (1993), *quoting State v. Stoddard,* 105 Idaho 533, 539, 670 P.2d 1318, 1324 (Ct.App.1989). The court properly instructed the jury that there is no distinction between direct evidence and circumstantial evidence as a

means of proof and that neither is entitled to any greater weight than the other. The district court's decision to reject the *Holder* instruction was not error.

## CONCLUSION

We hold that the district court did not err in concluding that Waggoner had knowingly, voluntarily and intelligently waived his right to counsel. We further hold that the court did not err in refusing to suppress Waggoner's statement. We conclude that the ethical conflict alleged by defense counsel that gave rise to his motion for mistrial did not prejudice the defendant. Similarly, the admission of the photograph of the victim's bruised face did not constitute unfair prejudice. We hold that the district court did not abuse its discretion in denying Waggoner's motion to continue the trial. Finally, we hold that Waggoner was not entitled to a *Holder* instruction. Accordingly, we affirm the judgment of conviction for aiding and abetting robbery, burglary in the first degree, and misdemeanor assault.

WALTERS, C.J., and SILAK, Acting Judge, concur.