42 P.3d 100

STATE of Idaho, Plaintiff–Respondent,

v.

Jeff Walter ROUNSVILLE,
Defendant–Appellant.

No. 25842.

Court of Appeals of Idaho.

Feb. 13, 2002.

Molly J. Huskey, Interim State Appellate Public Defender; Paul S. Sonenberg, Deputy Appellate Public Defender, Boise, for appellant. Molly J. Huskey argued.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

LANSING, Judge.

Jeff Walter Rounsville was convicted of possession of methamphetamine after the drug was found during a search of his home. The warrant for the search was based on information obtained through a known informant who claimed to have purchased methamphetamine from Rounsville. Motions by Rounsville to suppress evidence found in the search and statements he made to the police were denied, as was a later motion by Rounsville to withdraw his guilty plea. On appeal, Rounsville challenges the rulings on these motions, the denial of a motion to withdraw his guilty plea, and the length of his sentence.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

Bonner County Sheriff's deputies obtained a warrant for the search of Rounsville's home based upon information obtained from an informant named Campbell. Campbell had been arrested for possession of methamphetamine and was questioned by deputies about his source for the drug. It is a matter of dispute as to whether Campbell initially named Rounsville or a man named Johnson as his source, but it is clear that Campbell eventually told the deputies that he had acquired methamphetamine from Rounsville. Based on this information, the deputies applied for a warrant to search Rounsville's home, outbuildings and vehicles. In support of the warrant application, Campbell personally appeared before the magistrate and testified that he had purchased methamphetamine from Rounsville. Based on Campbell's testimony, the magistrate issued the warrant. The resulting search turned up baggies of methamphetamine and evidence of methamphetamine manufacturing. Rounsville was charged with possession of methamphetamine, Idaho Code § 37–2732(c)(1).

Rounsville filed a suppression motion challenging the validity of the warrant for the search of his property. He requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to show that the deputies who obtained the warrant withheld material exculpatory information from the magistrate. After conducting a *Franks* hearing at which the deputies and Campbell testified, the district court found that the deputies had not withheld material information, and the court denied the suppression motion. Rounsville also moved to suppress two statements he made to police during the search of his home. The district court suppressed a statement given by Rounsville before he had been advised of his *Miranda* rights,[1] but denied the motion as to Rounsville's further comments made after the *Miranda* warnings.

Rounsville thereafter entered a guilty plea, reserving his right to appeal the district court's rulings on his suppression motions. Before sentencing, Rounsville moved to withdraw his guilty plea. The district court denied this motion and sentenced Rounsville to a unified term of six years with three years determinate. A subsequent motion to reduce the sentence was denied.

On appeal, Rounsville challenges the denial of his suppression motions and his motion to withdraw his guilty plea, and he contends that the district court abused its discretion in imposing sentence and in denying Rounsville's motion to reduce the sentence.

## II.

### DISCUSSION

#### A. Scope of *Franks* Hearing

Rounsville's first issue on appeal is whether the district court improperly limited the scope of his *Franks* hearing by precluding Rounsville from cross-examining the deputies about whether they had reason to believe that Campbell "was a liar" when they arrested him. The district court held that this attempted cross-examination went beyond the subject matter of the requested *Franks* hearing because Rounsville's request for a hearing had been based solely upon a contention that the deputies had concealed from the magistrate the fact that Campbell initially named a man other than Rounsville as the source of his methamphetamine. On appeal, Rounsville contends that this limitation on his cross-examination was improper.

■ In *Franks*, the United States Supreme Court held that a criminal defendant is entitled to an evidentiary hearing to challenge the veracity of evidence used by officers to obtain a search warrant if the defendant makes a substantial preliminary showing that the evidence included an intentionally false statement or a statement made with reckless disregard for the truth. The *Franks* doctrine applies not only to affirmative falsehoods in a warrant application but also to a deliberate or reckless omission of material exculpatory information. *State*

1. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

*v. Guzman*, 122 Idaho 981, 983–84, 842 P.2d 660, 662–63 (1992); *State v. Peterson*, 133 Idaho 44, 47, 981 P.2d 1154, 1157 (Ct.App. 1999); *State v. Kay*, 129 Idaho 507, 511, 927 P.2d 897, 901 (Ct.App.1996); *State v. Beaty*, 118 Idaho 20, 24–26, 794 P.2d 290, 294–96 (Ct.App.1990).

The United States Supreme Court made it clear that a *Franks* evidentiary hearing is not to be lightly granted but may be allowed only "where the defendant makes a 'substantial preliminary showing'" of an intentional or reckless falsehood. *Franks*, 438 U.S. at 155, 98 S.Ct. at 2676, 57 L.Ed.2d at 672. The nature of the defendant's burden to make this preliminary showing was further described as follows:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

*Id.* at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682.

Rounsville supported his request for a *Franks* evidentiary hearing with an affidavit from the informant, Campbell. In the affidavit, Campbell stated that when officers initially asked him where he obtained the methamphetamine found in his possession, he told the officers that he got it from a man named Johnson. According to the affidavit, when Campbell was later asked by another deputy where he got the methamphetamine, and Campbell responded that he got it from Johnson, the deputy said that he did not believe Campbell and asked if the drug really came from Rounsville. Campbell's affidavit continued with an assertion that Campbell then named Rounsville because, from the

deputy's reaction when he named Johnson, "It was obvious to me that [the deputy] wanted me to name Rounsville." The affidavit further stated that in testifying before the magistrate, Campbell falsely testified that he had purchased his methamphetamine from Rounsville. It was on the basis of this evidentiary showing, that the district court granted a *Franks* hearing to give Rounsville an opportunity to show that the deputies misled the magistrate who issued the search warrant by failing to disclose that Campbell had first named Johnson, rather than Rounsville, as his source for the methamphetamine.

At the *Franks* evidentiary hearing, Campbell's live testimony gave far less support to Rounsville's motion than might have been expected because Campbell repeatedly contradicted himself on the question of whether he procured his methamphetamine from Johnson or Rounsville and what he had told the officers in that regard. During the *Franks* hearing, Rounsville also attempted to support his claim that the officers who obtained the search warrant had withheld material exculpatory information by cross-examining one deputy about whether, at the time of Campbell's arrest, the deputy had "reason to believe that Mr. Campbell was a liar." On the State's objection, the district court disallowed this cross-examination because it went "outside of those factors which you presented in order to make the threshold showing" for a *Franks* hearing. It is this ruling that Rounsville challenges on appeal, contending that the district court unduly limited the scope of the *Franks* hearing.

We find no error. In its *Franks* decision, the United States Supreme Court stressed that a defendant's entitlement to an evidentiary hearing depends upon a preliminary showing, through an offer of proof, of specific dishonesty, either reckless or intentional, in the evidence presented in support of the warrant application. *Franks*, 438 U.S. at 171, 98 S.Ct. at 2684, 57 L.Ed.2d at 682. The Court was explicit in noting that it would be a "misuse" of the evidentiary hearing if it were employed for purposes of discovery or obstruction, and that this misuse was prevented by the requirement of "a substantial preliminary showing." *Id.* at 155, 98 S.Ct. at

2676, 57 L.Ed.2d at 672. Here, Rounsville's offer of proof upon which he predicated his request for a *Franks* hearing was limited to Campbell's affidavit in which he swore that he originally implicated Johnson as his source of methamphetamine and later named Rounsville only under pressure from law enforcement officers; Rounsville offered no evidence that officers were aware of any other incidents of falsehood by Campbell or that Campbell had a general propensity to lie. The district court correctly confined Rounsville's *Franks* hearing to the particular omission of exculpatory information that was alleged in his offer of proof.

## B. Probable Cause for Search Warrant

Rounsville next argues that the evidence presented in support of the warrant application did not show probable cause because there was insufficient evidence of Campbell's reliability.

The probable cause determination for a search warrant is made by examining the totality of the circumstances and making a practical, common sense decision whether given all the circumstances set forth in the evidence before the magistrate, there is a fair probability that contraband or evidence of a crime will be found in the place to be searched. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983); *State v. Carlson*, 134 Idaho 471, 475, 4 P.3d 1122, 1126 (Ct.App.2000). Where the warrant application is based in part upon information from an informant, factors supporting probable cause may include evidence indicating the reliability of the informant and the basis of the informant's knowledge. *Id.; Peterson*, 133 Idaho at 47, 981 P.2d at 1157.

In the present case, Campbell's testimony in support of the warrant application was given after he had been arrested for possession of methamphetamine and had entered into an agreement with the State whereby Campbell agreed to testify regarding his knowledge of the role of Rounsville and others in the methamphetamine trade and, in return, he received immunity from prosecution for information revealed in his testimony. At the warrant application hearing, the magistrate was made aware of these circumstances. Campbell then testified that he had purchased methamphetamine from Rounsville on at least twenty occasions. He gave a detailed description of Rounsville's home and surrounding property and specific locations where Rounsville hid methamphetamine. He testified to having seen both methamphetamine and chemicals necessary to its manufacture in Rounsville's home. Officers then testified that through interrogations on three separate occasions, Campbell had been consistent in the details of the information he gave *concerning* Rounsville. They also testified that Campbell had expressed fear for his own safety in light of the information that he was providing concerning Rounsville and other persons involved locally in the methamphetamine trade. The officers also had verified some details of Campbell's description of Rounsville's home and its surroundings by surveilling the residence from positions outside of the property.

We conclude that probable cause was established by this evidence. Although Campbell was part of the "criminal milieu" and his veracity might therefore be open to question, *see Dunlap v. State,* 126 Idaho 901, 907, 894 P.2d 134, 140 (Ct.App.1995), here the magistrate had a reasonable basis to find Campbell's information trustworthy. Most importantly, Campbell's information was presented through direct testimony before the magistrate and not, as is often the case, through a hearsay affidavit of a police officer relating information obtained from an informant. Thus, in this case, the magistrate had opportunity to personally view Campbell and assess his credibility. In addition, Campbell was in custody under prosecution for his own possession of methamphetamine at the time of his testimony and was presumably aware that adverse consequences could follow if he gave false information to the magistrate. This circumstance provided a further indicator of reliability to his testimony. Therefore, the district court correctly rejected Rounsville's contention that the warrant was not supported by probable cause.

## C. Voluntariness of Rounsville's Post-*Miranda* Statement

We next consider Rounsville's contention that the district court should have sup-

pressed a statement that Rounsville made during the officers' search of his home and after Rounsville had been advised of his *Miranda* rights.

■ The search warrant was executed by approximately six members of the Bonner County Sheriff's Department's Emergency Response Team ("ERT"). They arrived at Rounsville's home on a Thursday morning dressed in black uniforms, wearing helmets and goggles, and armed with handguns. The officers knocked on the front door and announced their intent to enter. After the door was opened by a young boy, the officers secured the premises. Rounsville was found in bed and forced to get up, without being given the opportunity to put on a shirt. The officers handcuffed Rounsville and moved him to the kitchen where he was ordered to sit. The young boy was placed in a different room. Shortly thereafter, at approximately 9:30 a.m., Officer Dressel entered the home. Dressel read the search warrant to Rounsville and later informed Rounsville of his *Miranda* rights. When asked if he understood his rights, Rounsville responded affirmatively. Rounsville remained at the kitchen table throughout the search. Eventually, after the ERT officers had left and been replaced by other officers, methamphetamine was discovered. Saying nothing, Dressel took a bag of the seized methamphetamine and placed it on the kitchen table in front of Rounsville. After staring at the bag, Rounsville said, "Let's make a deal," and offered to help police apprehend other drug users. Rounsville asserts that these statements to Dressel should be suppressed because they were involuntary.

■ A suspect's waiver of *Miranda* rights or the underlying privilege against self-incrimination will be valid only if the waiver was knowing, voluntary and intelligent. *State v. Dunn,* 134 Idaho 165, 169, 997 P.2d 626, 630 (Ct.App.2000). The test of voluntariness is whether, under the totality of the circumstances, the suspect's will was overborne by police coercion. *Arizona v. Fulminante,* 499 U.S. 279, 286, 111 S.Ct. 1246, 1252, 113 L.Ed.2d 302, 315–16 (1991); *Colorado v. Connelly,* 479 U.S. 157, 163–67, 107 S.Ct. 515, 519–22, 93 L.Ed.2d 473, 481–85

(1986); *State v. Radford,* 134 Idaho 187, 191, 998 P.2d 80, 84 (2000); *State v. Davila,* 127 Idaho 888, 892, 908 P.2d 581, 585 (Ct.App. 1995). The burden is upon the State to prove voluntariness. Generally, the burden of making a prima facie showing of voluntariness can be met through evidence that the suspect was not threatened or promised anything and appeared to freely decide to make the statement and to forego the assistance of counsel. If the defense then produces evidence suggesting official coercion or overreaching that significantly affected the suspect, the prosecution may have to respond with more detailed evidence in order to meet its burden of persuasion. *State v. Fabeny,* 132 Idaho 917, 921, 980 P.2d 581, 585 (Ct. App.1999); *Davila,* 127 Idaho at 891, 908 P.2d at 584.

Here, Rounsville contends that the officers, by their sheer numbers and show of force, intimidated and coerced him. He points out that ERT officers, dressed in black and pointing handguns, surrounded him in his bed, ordered him to get up, handcuffed him, took him only half dressed, and forced him to sit at his kitchen table. Although these procedures might well be viewed as intimidating, we find Rounsville's argument unpersuasive because, by the time Rounsville made the statements in question, the ERT officers had departed, having been replaced by Officer Dressel and his team, and considerable time had passed since Rounsville was roused from his bed. Rounsville made the statements after he had been apprised of his *Miranda* rights and while in the environment of his own home. The evidence supports the district court's finding that Rounsville had sufficient time to overcome any initial shock or fear occasioned by the ERT officers' sudden entry and that Rounsville's statements were not the product of coercion.

■ Rounsville's contention that Dressel coerced him into speaking by placing on the kitchen table in front of Rounsville a bag of methamphetamine that the officers had found is also without merit. Officer Dressel did not accompany this action with any statement or question; he merely confronted Rounsville with incriminating evidence.

While the officers' discovery of the bag of methamphetamine may have been disheartening to Rounsville, this emotion was not the result of police coercion. "[P]sychological pressures bearing on a defendant that are not created by police conduct do not require the suppression of a confession." *State v. Wilson*, 126 Idaho 926, 929, 894 P.2d 159, 162 (Ct.App.1995). We thus find no error in the district court's refusal to suppress Rounsville's statements to Officer Dressel.

### D. Motion to Withdraw Guilty Plea

■ Following the adverse rulings by the district court on Rounsville's suppression motions, Rounsville pleaded guilty to possession of methamphetamine and the State dismissed a charge of conspiracy to manufacture methamphetamine in a separate case. Shortly thereafter, Rounsville moved to withdraw his guilty plea. The basis for this request was that Rounsville had lately had the opportunity to review the State's evidence against him and had concluded that he should not have entered a guilty plea. The district court denied the motion. On appeal, Rounsville contends that the district court's decision should be vacated and the matter remanded for reconsideration because the court incorrectly applied the more stringent "manifest injustice" standard that applies only to motions to withdraw guilty pleas made after sentencing rather than the lenient "good cause" standard that governs when the motion precedes sentencing. *See* Idaho Criminal Rule 33(c); *State v. Lavy*, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992); *State v. Miller*, 134 Idaho 458, 460, 4 P.3d 570, 572 (Ct.App. 2000); *State v. Dye*, 124 Idaho 250, 253–54, 858 P.2d 789, 792–93 (Ct.App.1993). Rounsville's assertion is incorrect, for the district court expressly stated that the good cause standard had not been met to support Rounsville's motion; the mere fact that the district court also mentioned the manifest injustice standard does not mean that the court based its holding on an incorrect standard.

■ Rounsville also contends that his plea was not knowingly and voluntarily made because, before taking the plea, the district court did not advise Rounsville that the court would not be bound by the prosecution's sentencing recommendation of no more than one year of incarceration followed by probation.[2]

■ To constitute an effective waiver of constitutional rights, a criminal defendant's guilty plea must be knowing and voluntary. *State v. Mauro*, 121 Idaho 178, 180, 824 P.2d 109, 111 (1991); *State v. Detweiler*, 115 Idaho 443, 445, 767 P.2d 286, 288 (Ct.App.1989). In Idaho, a trial court must follow the minimum requirements of Idaho Criminal Rule 11(c) in accepting guilty pleas, including the requirement that the defendant be informed that the court is not bound by any promises or recommendations from either party as to punishment. I.C.R. 11(c)(5). Rounsville contends that the requirements of Rule 11(c)(5) were not met, and therefore his guilty plea may not be deemed to have been made knowingly and voluntarily.

We disagree with Rounsville's contention. Rule 11(c) specifies:

> Before a plea of guilty is accepted, *the record of the entire proceedings*, including reasonable inferences drawn therefrom, must show:
>
> ... including minimum and maximum punishments, and other direct consequences that would apply.
>
> . . . .
>
> (5) ... that the defendant was informed that the court is not bound by any promises or recommendation from either party as to punishment.

(Emphasis added.) Here, "the record of the entire proceedings" shows that Rounsville was informed that the district court was not bound by the sentencing terms of the plea agreement, although the court itself did not so advise him. The written plea agreement, which was signed by Rounsville, stated that

2. The State contends that we should not address this challenge to Rounsville's guilty plea because it was not raised in the court below. For purposes of this appeal we will assume, without deciding, that Rounsville's contention raises a question of fundamental error that may be addressed for the first time on appeal. *See State v. Sarabia*, 125 Idaho 815, 818, 875 P.2d 227, 230 (1994).

"[t]he court will not be bound by either the recommendations of the state or Defendant." This plea agreement was drafted by Rounsville's trial counsel. When questioned at the plea hearing, Rounsville told the district court that he was familiar with the terms of the agreement and that he had signed it. Thus, the record shows that Rounsville knew that the district court was not obligated to follow the sentencing recommendations. The court's failure to expressly so inform Rounsville was cured by the language of the plea agreement and did not deprive Rounsville of the knowledge necessary to enter a knowing, voluntary, and intelligent plea.

### F. Sentence

■ Lastly, we consider Rounsville's contention that his sentence is excessive and that the district court abused its discretion by denying Rounsville's motion brought under I.C.R. 35 for reduction of the sentence.

■ We review a sentence for an abuse of the trial court's discretion. *State v. Anderson,* 103 Idaho 622, 651 P.2d 556 (Ct. App.1982). The length of a sentence is evaluated against the sentencing goals of protecting society, deterrence, rehabilitation and retribution. *State v. Toohill,* 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct.App.1982). If the sentence is not illegal, the appellant has the burden to show that it is unreasonable on the facts of the case. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992); *State v. Nice,* 103 Idaho 89, 645 P.2d 323 (1982). When the trial court has denied a Rule 35 motion for reduction of a sentence, we review that decision for an abuse of discretion, applying the same criteria used for determining the reasonableness of the original sentence. *State v. Hernandez,* 121 Idaho 114, 117, 822 P.2d 1011, 1014 (Ct.App.1991); *State v. Forde,* 113 Idaho 21, 22, 740 P.2d 63, 64 (Ct.App.1987); *State v. Lopez,* 106 Idaho 447, 680 P.2d 869 (Ct.App.1984).

Rounsville has a substantial criminal history including a felony conviction for delivery of cocaine and misdemeanor convictions for hit and run and driving under the influence. He was also arrested for fleeing the jurisdiction after he failed to attend his presentence interview in the present case. Rounsville did not accept responsibility for the present offense; instead he repeatedly denied ownership of the methamphetamine in his home. On this record, we conclude that the district court properly exercised its discretion in determining Rounsville's sentence and in denying the Rule 35 motion.

### III.

### CONCLUSION

Rounsville has not demonstrated error in the limitations the district court placed on the scope of the *Franks* hearing or in the court's ultimate determination that the warrant for the search of Rounsville's home was supported by probable cause. The record also supports the district court's refusal to suppress statements made by Rounsville to police after he was informed of his *Miranda* rights. Rounsville's challenges to the validity of his guilty plea are also without merit, and his sentence is not shown to be excessive. Therefore, the judgment of conviction, the sentence, and the order denying Rounsville's Rule 35 motion, are affirmed.

Judge Pro Tem SCHWARTZMAN (following his retirement) and Judge Pro Tem WESTON concur.