83 P.3d 123

STATE of Idaho, Plaintiff-Respondent,

v.

Stephen A. CHERRY, Defendant-Appellant.

No. 24440.

Court of Appeals of Idaho.

Sept. 8, 2003.

Review Denied Jan. 27, 2004.

Molly J. Huskey, State Appellate Public Defender; Charles Isaac Wadams, Deputy Appellate Public Defender, Boise, for appellant. Charles Isaac Wadams argued.

Hon. Lawrence G. Wasden, Attorney General; Ralph R. Blount, Deputy Attorney General, Boise, for respondent. Ralph R. Blount argued.

LANSING, Chief Judge.

Stephen Allan Cherry appeals from the judgment of conviction entered after he was found guilty by a jury of first degree murder, aggravated battery, and aggravated assault. He contends that the prosecutor's office should have been disqualified due to a conflict of interest that arose when one of Cherry's appointed attorneys changed employment and went to work for the prosecutor's office, that statements that Cherry made to police while he was hospitalized should not have been deemed admissible to impeach him at trial, that evidence of Cherry's prior misconduct was erroneously admitted, and that

the reasonable doubt instruction given to the jury was inadequate. We affirm.

# I.

## BACKGROUND

According to the State's evidence at trial, Cherry went to the home of his former girlfriend, Susan Foutz, and shot her three times with a rifle as she was sitting in the driver's seat of her car in front of her house. Charles Babb, who was sitting in the passenger's seat, was also injured by one of the bullets. Cherry then entered Foutz's house by shooting the lock off the door. He chased Foutz's roommate out of the house, threatening to shoot her as she ran. Thereafter, Cherry shot himself in the chest. While he was hospitalized for this wound, police officers interviewed him several times.

Cherry was charged with murder in the first degree, Idaho Code §§ 18–4001, – 4002, –4003, –4004, aggravated battery, I.C. §§ 18–903, –907, and aggravated assault, I.C. §§ 18–901, –905(b). The State also requested sentencing enhancements for use of a deadly weapon during the commission of these crimes, I.C. § 19–2520. After a trial, a jury found Cherry guilty of all charges.

# II.

## ANALYSIS

### A. Use of Cherry's Statements Made at Hospital as Impeachment

After the shooting, Cherry was transported to Kootenai Medical Center where he underwent surgery and remained for approximately ten days. Police officers spoke with Cherry at the hospital on four occasions, the first occurring one day after Cherry's surgery, when he was sedated and breathing with the aid of a ventilator. This interview lasted only ten minutes because Cherry was drifting in and out of consciousness. At each of the following three interviews, Cherry was informed of his *Miranda* rights and consented to the questioning. On each occasion, after interrogating Cherry about the incident, officers asked him several general questions, such as his name, date of birth,

social security number, address, and phone number, to test his understanding of their questions, his memory and his orientation. Cherry was able to respond accurately.

Before trial Cherry moved to suppress the statements he made during these interviews on the grounds that they were made involuntarily and in violation of his Sixth Amendment right to counsel. The State responded that it would not offer Cherry's statements in its case-in-chief, but sought a ruling that such statements were admissible for purposes of impeachment if Cherry chose to testify. As to the first interview, the district court found that Cherry was incapable of making a knowing, intelligent and voluntary waiver of or exercise of his rights. As to the remaining three interviews, however, the court found that although Cherry was under medication, he was lucid and oriented. The court therefore held that although the statements were made in violation of Cherry's right to counsel, they were given voluntarily and consequently could be used for impeachment. As a result of the court's ruling, Cherry chose not to testify at his trial but did make an offer of proof of the testimony he would have given had he not been subject to impeachment with these prior statements.

On appeal, Cherry contends that the district court erred in its ruling because the statements he made while hospitalized were not voluntary. He argues that the statements were not the product of free will, but rather a result of "a mind blurred with drugs, pain, and fear." The State responds that the district court's ruling was correct because there was no evidence of any coercive tactics by the police and the police did not force Cherry's statement against his will. The State also contends that Cherry has waived this claim of error by not testifying at trial.

Statements obtained by police in violation of an accused's right to counsel may not be used in the State's case-in-chief, but are admissible to impeach the accused if he testifies at trial. *Harris v. New York*, 401 U.S. 222, 224, 91 S.Ct. 643, 645, 28 L.Ed.2d 1, 3–4 (1971); *Michigan v. Harvey*, 494 U.S. 344, 350–51, 110 S.Ct. 1176, 1180, 108 L.Ed.2d 293, 302 (1990). Even this limited

use is not permissible, however, for statements that an accused made involuntarily. The use of a defendant's involuntary statements in a criminal trial is a denial of due process, *Mincey v. Arizona,* 437 U.S. 385, 398, 98 S.Ct. 2408, 2416, 57 L.Ed.2d 290, 303 (1978), and therefore involuntary statements are inadmissible for all purposes, including impeachment. *Harvey,* 494 U.S. at 351, 110 S.Ct. at 1180–81, 108 L.Ed.2d at 302–03; *Mincey,* 437 U.S. at 398, 98 S.Ct. at 2416, 57 L.Ed.2d at 303. When a defendant seeks suppression of a confession as having been involuntarily given, it is the prosecution's burden to prove by a preponderance of the evidence that the confession was voluntary. *Lego v. Twomey,* 404 U.S. 477, 481, 92 S.Ct. 619, 622–23, 30 L.Ed.2d 618, 622–23 (1972); *State v. Dillon,* 93 Idaho 698, 710, 471 P.2d 553, 565 (1970); *State v. Rounsville,* 136 Idaho 869, 874, 42 P.3d 100, 105 (Ct.App.2002); *State v. Fabeny,* 132 Idaho 917, 922, 980 P.2d 581, 586 (Ct.App.1999).

Before considering whether the district court's ruling allowing the use of Cherry's statements for impeachment was erroneous, we must first address the State's argument that this issue has not been preserved for appeal because Cherry elected not to testify and the statements therefore were never admitted. The State relies upon *Luce v. United States,* 469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984), where the United States Supreme Court held that a defendant who did not testify would not be allowed to appeal an in limine ruling that permitted use of a prior conviction for impeachment purposes under Federal Rule of Evidence 609(a). The *Luce* procedural bar was adopted by this Court in *State v. Garza,* 109 Idaho 40, 45, 704 P.2d 944, 949 (Ct.App.1985), where the defendant sought to overturn an in limine ruling allowing use of a prior conviction for impeachment. The State argues that, by application of *Luce* and *Garza,* Cherry is barred from challenging the ruling on his suppression motion because he did not testify at trial.

The *Luce* and *Garza* courts dealt only with evidentiary objections that were based on rules of evidence. The State urges that we broaden the procedural bar of *Luce*

and *Garza* to also preclude appeals by non-testifying defendants where the challenge to the impeachment evidence is based on constitutional violations. In *Luce,* the Supreme Court left this question open, noting that its ruling dealt with a preliminary ruling "not reaching constitutional dimensions," *Luce,* 469 U.S. at 43, 105 S.Ct. at 464, 83 L.Ed.2d at 448; and a concurring opinion acknowledged that if a constitutionally based objection to the impeachment evidence were presented, "the calculus of interests" might be different. *Id.* at 44, 105 S.Ct. at 464, 83 L.Ed.2d at 449 (Brennan, J. concurring). The federal circuit courts that have addressed this appealability issue have held that the *Luce* rule does not apply to bar appeals by non-testifying defendants who sought the suppression of evidence on constitutional grounds. *United States v. Chischilly,* 30 F.3d 1144, 1150–51 (9th Cir.1994); *Biller v. Lopes,* 834 F.2d 41, 43–44 (2nd Cir. 1987); *United States ex rel. Adkins v. Greer,* 791 F.2d 590, 594 (7th Cir.1986). Regardless of the scope of the *Luce* procedural bar for the federal courts, because it is not based upon constitutional principles, it is not binding upon state courts. We conclude that, where a defendant elects not to testify due to the trial court's decision allowing impeachment with evidence allegedly obtained in violation of constitutional rights, and where the defendant has made an adequate offer of proof as to the testimony that otherwise would have been introduced, he should not be precluded from raising the constitutional question on appeal. Accordingly, we will consider Cherry's argument that the court erred in holding that his statements made to police in all but the first interview were voluntary.

In determining the voluntariness of statements made by a defendant to police officers, the court must look to the "totality of the circumstances." *State v. Radford,* 134 Idaho 187, 191, 998 P.2d 80, 84 (2000); *State v. Fabeny,* 132 Idaho 917, 922, 980 P.2d 581, 586 (Ct.App.1999); *State v. McLean,* 123 Idaho 108, 111, 844 P.2d 1358, 1361 (Ct.App. 1992). A statement will be deemed involuntary if the defendant's will was overborne by police coercion or overreaching. *Arizona v. Fulminante,* 499 U.S. 279, 287–88, 111 S.Ct.

1246, 1252–53, 113 L.Ed.2d 302, 316–17 (1991); *Radford,* 134 Idaho at 191, 998 P.2d at 84; *State v. Langford,* 136 Idaho 334, 339, 33 P.3d 567, 572 (Ct.App.2001). When reviewing the trial court's determination on a voluntariness issue, we defer to the factual findings that are supported by substantial evidence, but we independently determine whether those facts demonstrate a violation of constitutional rights. *State v. Weber,* 116 Idaho 449, 452, 776 P.2d 458, 461 (1989); *State v. Whiteley,* 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct.App.1993).

In the instant case, the district court found that during each interview Cherry was in pain, under medication and hospitalized. The court also found, however, that he "knew who he was, knew who was interviewing him, knew his birth date, his social security number, his and his daughter's telephone numbers." The court concluded that in the absence of evidence of threats or badgering by the police or evidence that Cherry's statements were not of his own volition, the statements were voluntary and admissible for impeachment.

We have reviewed the evidence and we find no error in the district court's determination. The evidence shows that, while Cherry was definitely not feeling his best, the police never used any coercive or overbearing tactics to get him to speak with them. Rather, the officers were exceptionally courteous to Cherry, and they began each interview by informing him of his *Miranda* rights and telling him that he was not required to answer any of their questions. The district court's finding that Cherry's response to police questioning was voluntary is therefore supported by substantial evidence. Consequently, we will not disturb the district court's holding that the statements were admissible for purposes of impeachment if Cherry were to testify.

## B. Conflict of Interest

After the office of the public defender was appointed to represent Cherry, two attorneys from that office were assigned to his case. Before trial, one of these attorneys applied for a position with the Kootenai County Prosecutor's Office and was hired by that office. Thereafter, Cherry filed a motion to disqualify the entire prosecutor's office on the ground of a conflict of interest. The district court denied the motion, a ruling that Cherry assigns as error.[1]

Cherry contends that this circumstance calls for application of Idaho Rule of Professional Conduct 1.10, which prohibits lawyers who are associated in a firm from representing a client "when any one of them practicing alone would be prohibited from doing so...." Because his former attorney would have been prohibited from prosecuting him, Cherry reasons, the remainder of attorneys in the prosecutor's office were likewise disqualified. The comments to Rule 1.10 make clear, however, that this rule does not apply when dealing with movement between private practice and governmental employment. Rather, I.R.P.C. 1.11(c)(1) applies when an attorney represents the government after having served a private client. This rule is more limited in scope than Rule 1.10 and disqualifies from participation in the case only the attorney who had previously represented the client.[2] The comments to Rule 1.10 note that different provisions apply to the government because government "has a much wider circle of adverse legal interests than does any private law firm," and therefore, "the government's recruitment of lawyers would be seriously impaired if Rule 1.10

---

1. Cherry's brief also asserts, as an issue on appeal, that the prosecutor's office should be disqualified because of misconduct by the state officers who interviewed Cherry at the hospital and because Cherry was not brought immediately before a magistrate, informed of the charges against him, and appointed counsel with whom he could consult. However, when issues on appeal are not supported by propositions of law, authority or argument, they will not be considered. *State v. Zichko,* 129 Idaho 259, 263, 923 P.2d 966, 970 (1996). Cherry has offered no authority or argument on this issue and, consequently, has waived this question of prosecutorial misconduct.

2. The attorney who assisted in Cherry's representation before moving to the prosecutor's office swore in an affidavit that he had not disclosed to nor discussed with anyone in the prosecutor's office any "facts of the case, nor confidential communications, nor trial strategy, nor any other matters" regarding the case.

were applied to the government." Accordingly, the Idaho Rules of Professional Conduct did not call for disqualification of the entire county prosecutor's office in Cherry's case.

■ In addition, a criminal defendant asserting a prosecutor's conflict of interest must demonstrate actual prejudice in order to obtain relief. *See State v. Gibson,* 106 Idaho 54, 58, 675 P.2d 33, 37 (1983) (mere appearance of impropriety is insufficient to require reversal; actual prejudice must be shown); *State v. Merrifield,* 109 Idaho 11, 14, 704 P.2d 343, 346 (Ct.App.1985) (same). Cherry has shown no prejudice as a result of his former attorney's move to the prosecutor's office. He alleges that the situation caused him to lose trust in the county public defenders and made it difficult for him to openly communicate with his remaining attorney. Even assuming, however, that a defendant could predicate prejudice on a claim of his own withholding of open communication, he hasn't identified any information that he withheld or any way in which his defense was adversely affected. Accordingly, the district court did not err in denying Cherry's motion to disqualify the county prosecutor's office.

## C. Rule 404(b) Evidence

■ Prior to trial, Cherry moved to exclude evidence that three days before the shooting, he had been arrested upon Foutz's complaint to the police that he was trespassing on her property. The district court held this evidence was admissible to show that Cherry had a motive to harm Foutz. On appeal, Cherry contends that the district court erred in this ruling because such evidence was propensity evidence made inadmissible by Idaho Rule of Evidence 404(b).

Rule 404(b) specifies that evidence of uncharged misconduct is generally inadmissible when offered to "prove the character of a person in order to show action in conformity therewith." Such evidence is nevertheless admissible when introduced for other purposes such as proof of motive, intent, plan, knowledge, and identity. I.R.E. 404(b); *State v. Custodio,* 136 Idaho 197, 204, 30 P.3d 975, 982 (Ct.App.2001).

■ In examining whether the admission of evidence violated Rule 404(b), we first determine whether the evidence is relevant for a purpose other than proof of bad character and conforming conduct. This is a question of law subject to our free review. *State v. Tapia,* 127 Idaho 249, 254, 899 P.2d 959, 964 (1995); *State v. Raudebaugh,* 124 Idaho 758, 764, 864 P.2d 596, 602 (1993). If such relevance is found, we next apply an abuse of discretion standard to review the trial court's determination that the probative value of the evidence was not outweighed by unfair prejudice. *State v. Canelo,* 129 Idaho 386, 393, 924 P.2d 1230, 1237 (Ct.App.1996).

The evidence of Cherry's dispute with Foutz three days before the shooting and of Cherry's consequent arrest was unquestionably relevant for permissible purposes. It was not introduced to prove that Cherry had a propensity for crime, but rather was probative to demonstrate that he had a motive to shoot Foutz and did so with malice aforethought and/or premeditation [3] because she had rejected him and had precipitated his arrest. The evidence provided the jury a more complete picture of the hostility that existed between Cherry and Foutz just prior to Foutz's death.

Because this evidence was highly probative to show motive and the mental element of first degree murder, there was no abuse of discretion in the district court's implicit determination that the probative value of the evidence was not outweighed by the danger of unfair prejudice.

## D. Reasonable Doubt Instruction

■ Cherry maintains that the instruction on reasonable doubt given to the jury in this case impermissibly reduced the State's burden of proof in violation of the United States Constitution and the Idaho

---

**3.** The information charged Cherry with having committed first degree murder by killing Foutz "wilfully, unlawfully, deliberately, with premeditation and with malice aforethought." Murder encompasses killing with malice aforethought. I.C. § 18–4001. Murder is of the first degree if it is a "willful, deliberate and premeditated killing." I.C. § 18–4003(a).

Constitution. A challenge to the adequacy of jury instructions presents a question of law over which this Court exercises free review. *State v. Merwin,* 131 Idaho 642, 647, 962 P.2d 1026, 1031 (1998); *State v. Harris,* 136 Idaho 484, 485, 36 P.3d 836, 837 (Ct.App.2001). This requires that we determine whether the instructions, taken as a whole, fairly and accurately state the applicable law. *State v. Keaveny,* 136 Idaho 31, 33, 28 P.3d 372, 374 (2001); *Harris,* 136 Idaho at 485, 36 P.3d at 837.

The instruction that is challenged by Cherry informed the jury in part as follows:

"Proof beyond a reasonable doubt" is proof that leaves you firmly convinced of the defendant's guilt. There are very few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find the defendant guilty. If on the other hand, you think there is a real possibility that he or she is not guilty, you must give the defendant the benefit of the doubt and find the defendant not guilty.

Even when the evidence is so strong that it demonstrates the probability of the defendant's guilt, still if it fails to establish the defendant's guilt beyond a reasonable doubt then you must find the defendant not guilty. If after consideration of all the evidence in the case, you can reasonably explain the facts given in evidence on any reasonable ground other than the guilt of the defendant, you should find the defendant not guilty.

This instruction does not follow either of the pattern reasonable doubt instructions presented in the Idaho Criminal Jury Instructions, ICJI 103 and 103A.

Cherry first contends that the use of the term "possible doubt" without qualifying or modifying it with "imaginary," as is done in ICJI 103,[4] lessens the State's burden of proof because the instruction allows the jury to find an accused guilty even if a feasible doubt remains. For this argument in his appellate brief, Cherry relied upon this Court's decision in *State v. Sheahan,* Docket 26255, 2002 WL 31186625 (Ct.App. Sept. 27, 2002) (unpublished). However, the Idaho Supreme Court took review in *Sheahan* and, while Cherry's appeal was pending, issued a decision rejecting the argument that he proffers. *State v. Sheahan,* Docket No. 29121, 139 Idaho 267, 77 P.3d 956, 2003 WL 21782664 (Aug. 4, 2003). The instruction in *Sheahan* included a sentence nearly identical to the challenged sentence here, informing the *Sheahan* jury that "in criminal cases the law does not require proof which overcomes every possible doubt." Like Cherry, Sheahan argued that the omission of the word "imaginary" to describe the type of "possible doubt" that would be unreasonable lessened the State's burden of proof. The Idaho Supreme Court held, however, that the instruction adequately defined reasonable doubt and did not misstate the law. While expressing a preference for the pattern instructions, the Court held that the omission of "imaginary" did not impermissibly reduce the State's burden. The Supreme Court's decision in *Sheahan* is controlling here, and we thus hold that the trial court's failure to use "imaginary" to modify "possible doubt" did not render the instruction deficient.

Cherry also asserts a second flaw in the instruction. He contends that the last paragraph of the instruction, which was not part of the instruction used in *Sheahan* nor

---

4. ICJI 103 states:

A defendant in a criminal action is presumed to be innocent. This presumption places upon the state the burden of proving the defendant guilty beyond a reasonable doubt. Thus, a defendant, although accused, begins the trial with a clean slate with no evidence against the defendant. If, after considering all the evidence and my instructions on the law, you have a reasonable doubt as to the defendant's guilt, you must return a verdict of not guilty.

Reasonable doubt is defined as follows: It is not mere possible doubt, because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is the state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.

in any other reported Idaho decision that we have found, diminishes the State's burden. He argues that the terms "probability," and "reasonably explain," in this paragraph, when used together with the terms "firmly convinced" and "real possibility" in the preceding paragraph, create a confusing and contradictory instruction that is apt to confuse a jury about the proper standard to be applied. We find no merit in this argument. The terms are not confusing nor contradictory, and the paragraph tends to reinforce, rather than diminish, the heavy burden placed upon the State to prove a defendant's guilt beyond a reasonable doubt.

Accordingly, we hold that the challenged instruction did not misstate or diminish the State's burden to prove Cherry's guilt beyond a reasonable doubt.

### E. Delay in Appeal

Lastly, Cherry contends that a violation of his right to due process occurred in the course of this appeal. He seeks to have his conviction vacated on the ground that a delay in the appeal process, caused by the court reporter's failure to provide the necessary transcripts in a timely manner, has violated his due process rights. This issue has already been addressed, however, by the Idaho Supreme Court on Cherry's motion raising this due process claim before the appeal was assigned to this Court. The Supreme Court denied Cherry's motion to vacate his conviction on this ground. Because the Supreme Court's decision on Cherry's motion authoritatively resolved his claim that appeal delays violated his constitutional rights, we will not address the issue.

### III.

### CONCLUSION

The district court did not err in allowing Cherry's statements to police to be used for impeachment purposes, in denying his request to disqualify the prosecutor's office for a conflict of interest, in admitting evidence of Cherry's arrest for trespass prior to the charged offense, nor in explaining the State's burden of proof in the jury instruction defining reasonable doubt. Accordingly, the judgment of conviction is affirmed.

Judge PERRY and Judge GUTIERREZ CONCUR.